Brian A. Ertz (ISB No. 9960)
Eileen R. Johnson (ISB No. 9935)
ERTZ JOHNSON, LLP
P.O. Box 665
Boise, Idaho 83701
(208) 779-2929 (Telephone)
(208) 416-6665 (Fax)
brian@ertzjohnson.com
eileen@ertzjohnson.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **KRISTY MICKELSEN,** | Case No. |
| *Plaintiffs,* | |
| v. | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| **COLLEGE OF EASTERN IDAHO FOUNDATION, INC.; and JOHN AND JANE DOES I-XX, whose identities are unknown,** | |
| *Defendants.* | |

COMES NOW Plaintiff Kristy Mickelsen, by and through her undersigned counsel of record, and for causes of action against Defendant alleges as follows:

## JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that this action arises under the laws of the United States, namely 42 U.S.C. § 12131 *et seq.* and 29 U.S.C. § 701 *et seq.*

2.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in the City

of Idaho Falls, Bonneville County, State of Idaho.

3.       Based on the allegations set forth herein, the Court has personal jurisdiction over the Defendant in this action.

## PARTIES

4.       Plaintiff Kristy Mickelsen (hereinafter "Plaintiff") is now and at all times relevant herein was a resident of Ammon, Bonneville County, State of Idaho.

5.       Defendant College of Eastern Idaho Foundation, Inc. (hereinafter "Defendant CEI") is a non-profit corporation doing business in Bonneville County, State of Idaho.

6.       Defendant CEI operates College of Eastern Idaho (hereinafter "the College") located at 1600 S. 25th Street East, Idaho Falls, Idaho.

7.       Defendant CEI previously operated the College under the name of Eastern Idaho Technical College.

8.       The College receives federal financial assistance.

9.       Employees of Defendant CEI, identified herein, were acting within the scope of their employment at all times herein.

10.       The acts and omissions of Defendant CEI's employees were made in furtherance of Defendants CEI's business interests and pursuits.

## STATEMENT OF FACTS

11.       Plaintiff is disabled as that term is defined by the Americans with Disabilities Act, 42 U.S.C. § 12102(1).

12.       Plaintiff was diagnosed with Major Depressive Disorder, Bipolar Disorder II, Borderline Personality Disorder, Generalized Anxiety Disorder, and Primary Insomnia in 2016.

13.     Plaintiff was diagnosed with Attention-Deficit Hyperactivity Disorder, Periodic Limb Movement Disorder, and Post Traumatic Stress Disorder in 2017.

14.     When symptoms of Plaintiff's Major Depressive Disorder, Bipolar Disorder II, Borderline Personality Disorder, Generalized Anxiety Disorder, Attention-Deficit Hyperactivity Disorder, and/or Post Traumatic Stress Disorder disabilities manifest, Plaintiff has difficulty caring for herself, sleeping, learning, concentrating, thinking, and communicating.

15.     Plaintiff's career goal is to become a licensed Registered Nurse and provide care for others.

16.     To that end, Plaintiff applied for and was accepted to Defendant CEI's Licensed Practical Nursing (LPN) Program, when the College was operated as Eastern Idaho Technical College.

17.     Plaintiff attended Defendant CEI's LPN Program between August 25, 2014 and July 17, 2015.

18.     Students of the LPN Program must learn medical knowledge of certain diseases and disorders, which include etiology, risk factors, lab tests and physical tests, symptoms, medications that may be prescribed, and nursing interventions of the diseases and disorders.

19.     To successfully complete Defendant CEI's LPN Program, students must be competent in their knowledge of medication dosage ranges, side effects, interactions, food interactions, contraindications, processes, uses, administration routes, administration methods, patient monitoring skills, and patient education regarding medication.

20.     To successfully complete Defendant CEI's LPN Program, students must competently perform catheter insertion and removal; patient vital signs evaluations; physical patient assessment; insertion and removal of an intravenous (IV) line; insertion and removal of a

nasogastric tube; administration of oral medication;   medication administration by injection, intravenous push, intravenous piggyback, and intravenous solutions; flushing of a patient's venous access port; use of a diabetic monitor to check a patient's blood sugar level; and administration of insulin.

21.     Plaintiff successfully completed Defendant CEI's LPN program, including all practical skills performance requirements, and obtained her Idaho practical nursing license in October 2015.

22.     Plaintiff then enrolled in additional classes at Defendant CEI during the Spring 2016 semester, which Plaintiff successfully completed.

23.     Plaintiff also successfully completed an online math statistics course at College of Southern Idaho.

24.     As the next and final educational step toward reaching her career goal, Plaintiff enrolled in and was accepted into Defendant CEI's two-year Registered Nursing (RN) Program in January 2018.

25.     Plaintiff began her first semester of the Associate RN program (hereinafter "the Program") at the College on January 8, 2018.

26.     Most of the skills a student must competently perform as part of successful completion of the RN Program were those skills Plaintiff had already learned and successfully performed as part of the LPN Program.

27.      Plaintiff's class schedule consisted of three classroom classes and a once-per-week laboratory skills class.

28.     Plaintiff performed well in her three classroom courses.

29.    RN Program students are required to practice their practical skills in the lab with other students outside of the weekly laboratory skills class time.

30.    Each RN Program student's lab course grade is based on "skills tests" and "practical skills performance tests."

31.    The "physical assessment skills tests" required a student to practice each skill with the student's class peers and obtain a certain number of signatures from the peers verifying the student is competent in each practical skill.

32.    Because Plaintiff had previously learned most of the practical skills in the LPN Program, she was able to successfully perform the skills when practicing with her peers.

33.    "Skills tests" were administered by instructor Connie Hobbs.

34.    Students were allowed two attempts to complete each "skills test."

35.    All instructor-administered "skills tests" were timed, meaning each student must complete all skills within a limited amount of time to pass the test.

36.    Each student was also granted a once-per-semester third attempt that could be used on any instructor-administered "skills test."

37.    The first instructor-administered timed "skills test" was held on or about February 1, 2018.

38.    The purpose of the first "skills test" was to determine whether a patient's heart rate, respiratory rate, blood pressure, oxygen saturation, and temperature are within normal range.

39.    The test required each student to complete a step-by-step procedure consisting of approximately nine (9) steps, from the time the student enters the patient's room to the time the student leaves the patient's room, to evaluate the patient's temperature, heart rate, respiratory rate, blood pressure, and blood oxygen saturation within a limited amount of time.

40.     Plaintiff had previously learned and exhibited competency in the tested skills as part of the LPN Program.

41.     However, Plaintiff failed her first "attempt" to complete the test because Plaintiff miscounted the patient's pulse rate.

42.     On her second "attempt," Plaintiff successfully counted the Patient's pulse rate, but Plaintiff stopped hearing the patient's resting heartbeat (diastolic pressure) long before her instructor last heard it, resulting in a failed second "attempt."

43.     Plaintiff received her first "student warning notice" on February 1, 2018 for "unsatisfactory or unsafe lab practice."

44.     Plaintiff was confused because she had learned and competently performed these skills as part of the LPN Program, yet she was having trouble under test conditions.

45.     Plaintiff began to suffer symptoms of her anxiety and depression disorder disabilities.

46.     Plaintiff opted to utilize her one-time "third attempt" allowed each student each semester to pass the first "skills test" after learning how to minimize interference sound in the stethoscope to better allow Plaintiff to detect the patient's heartbeat, despite her hearing loss.

47.     Plaintiff was successful in her third attempt.

48.     Lab Instructor Connie Hobbs recommended that Plaintiff contact the College's Disability Resources and Services Center to discuss possible disability accommodations and/or to seek advice regarding improvements to Plaintiff's lab skills.

49.     Plaintiff contacted Hailey Holland, Coordinator of the College's Disability Resources and Services Center.

50. Plaintiff discussed her confusion and verified with Ms. Holland that Plaintiff knew and was competent to perform the skills tested on February 1, 2018.

51. Plaintiff entered into a "Student Success" contract which provided Plaintiff certain tasks and/or assignments, with due dates for each, to assist Plaintiff to successfully complete the "skills test."

52. Plaintiff also scheduled an appointment with an audiologist to determine Plaintiff's hearing functionality as it was obvious that Plaintiff was suffering from a hearing issue that prevented her from properly hearing the patient's diastolic heartbeat.

53. On or about February 2, 2018, Plaintiff underwent hearing tests which showed a notable loss of sensitivity in Plaintiff's right ear at 500 Hz.

54. Plaintiff was informed that she indeed had suffered hearing loss and would require an electronic stethoscope to allow Plaintiff to adjust the volume appropriately.

55. Plaintiff inquired with Ms. Hobbs about whether the College possessed a dual electronic stethoscope.

56. Ms. Hobbs responded that the College did not have a dual electronic stethoscope.

57. On or about February 5, 2018, Plaintiff failed her "physical assessment skills test" because Plaintiff was unable to obtain the minimum number of signatures from her peers that week due to intense depression and anxiety symptoms that had impacted her ability to fully participate in lab practice hours that week.

58. Ms. Hobbs refused to "sign off" on Plaintiff's "signature sheet" which was necessary for Plaintiff to pass the "physical assessment skills test."

59. Ms. Hobbs issued a second Student Warning Notice on or about February 6, 2018, again for "unsatisfactory or unsafe lab practice."

60.     A student would not be allowed to remain in the RN Program after receiving three (3) Student Notice Warnings, or after unsuccessfully utilizing all "attempts" allowed to complete a timed "skills test."

61.     As a result of the second Student Warning Notice, Plaintiff's depression and anxiety disorder symptoms intensified.

62.     Plaintiff notified Ms. Hobbs of the symptoms of Plaintiff's anxiety and depression disorders, which were intensifying after each test failure, and Plaintiff's confusion regarding her failures in light of her previously documented competence in the skills being tested as part of the LPN Program.

63.     Plaintiff and Ms. Hobbs spoke to Kathleen Nelson, the Director of the College's Nursing Program, regarding the difficulties Plaintiff's disabilities were causing.

64.     Plaintiff expressed her desire to succeed in the RN Program and inquired regarding options that were available to support Plaintiff in the RN Program until her intense depression and anxiety disorder symptoms abated.

65.     Plaintiff explained to Ms. Hobbs and Ms. Nelson that, based on previous "flare ups" of the symptoms related to her disabilities, Plaintiff expected that she would be fully functional within a couple of weeks.

66.     Ms. Hobbs suggested that Plaintiff take a leave of absence from the RN Program and return at a future date with a medical clearance later from Plaintiff's doctor stating that Plaintiff's symptoms of her disabilities, specifically her depression and anxiety disorders, had subsided.

67.     However, because Plaintiff wanted to graduate with her class and because Plaintiff expected to be fully functional within a relatively short time, Plaintiff opted to continue with the Program, rather than take a leave of absence.

68.     On or about February 8, 2018, Plaintiff successfully completed a timed "skills test."

69.     Plaintiff's "patient" was Ms. Holland.

70.     Between February 8, 2018 and March 12, 2018, Ms. Hobbs utilized lab class time to teach students, including Plaintiff, the skill of administering medications orally and through intramuscular injection and subcutaneous injection.

71.     Although Plaintiff felt comfortable performing these skills with her peers during lab practice time, Plaintiff's, Plaintiff's anxiety related to "skills tests" had increased.

72.     On or about March 12, 2018, Ms. Hobbs administered a time-limited "skills test" related to IV insertion, discontinuation, and related tasks.

73.     Plaintiff suffered significant anxiety during the test.

74.     As she performed the timed skills for Ms. Hobbs evaluation, Plaintiff was shaking, unable to process her thoughts clearly, and having trouble breathing.

75.     As a result, Plaintiff failed the March 12, 2018 timed "skills test" "due to unrecognized contamination at multiple points during the skills test."

76.     Plaintiff consulted her doctor regarding Plaintiff's increasing levels of anxiety and depression which were by then significantly impacting Plaintiff's daily life, in addition to her school performance.

77.     Plaintiff requested a reasonable accommodation from the College, related to Plaintiff's diagnosed anxiety and depression disorders, to allow Plaintiff to participate in the RN Program.

78.     On or about April 5, 2018, Ms. Holland approved Plaintiff's request for reasonable accommodation and provided Plaintiff with a letter verifying that Plaintiff required a reasonable accommodation of "1.5 the time provided on skills exams."

79.     Plaintiff provided the letter to Ms. Hobbs, who passed the letter on to Ms. Nelson.

80.     However, Plaintiff was informed that, despite Ms. Holland's approval of Plaintiff's reasonable accommodation request, the RN Program would not approve the reasonable accommodation because it was not requested prior to the beginning of the semester.

81.     It is unclear whether the policy that all reasonable accommodation requests must be submitted to and approved by Defendant CEI prior to the semester applied only to the College's Nursing Department policy or to the College generally.

82.     Plaintiff's request for reasonable accommodation of 1.5 time on all timed "skills tests" was denied by the faculty members of Defendant CEI's Nursing Department.

83.     On or about April 9, 2018, another instructor administered the timed "skills test" for "IV solutions, piggybacks, and pushes."

84.     Plaintiff participated in the timed test without the 1.5-time reasonable accommodation.

85.     Ms. Hobbs gave Plaintiff a failing grade on the April 9, 2018 timed "skills test" "due to [Plaintiff] exceeding the time allotted."

86.     Had Defendant CEI approved the "1.5 the time provided on skills exams" reasonable accommodation provided in Ms. Holland's April 5, 2018 letter to Defendant CEI's Nursing Department, Plaintiff would have passed the April 9, 2018 "skills test."

87.     Ms. Hobbs also issued a third Student Warning Notice to Plaintiff, stating that "should [Plaintiff] be unsuccessful in her 2nd attempt of IV solutions, piggybacks, and pushes it

will result in an additional waring [sic], and be the grounds for dismissal from the program.  A student is allowed 3 warnings per semester, this is [Plaintiff's] third warning this semester."

88.     Upon receipt of the third Student Warning Notice, Plaintiff experienced a debilitating increase in her depression and anxiety disorder symptoms.

89.     Plaintiff consulted Ms. Holland about the College's denial of Plaintiff's April 5, 2018 reasonable accommodation, and Plaintiff's subsequent test failure on April 9, 2018 related to Defendant CEI's denial of Plaintiff's April 5, 2018 reasonable accommodation.

90.     Ms. Holland inquired with Sharee Anderson, the College's Vice President of Student Affairs and Instruction, about the denial of Plaintiff's reasonable accommodation and subsequent related test failure.

91.     On or about April 9, 2018, Plaintiff received an email from Ms. Holland informing Plaintiff that Ms. Anderson had spoken with "the Nursing Department" and learned that the concerns with Plaintiff's performance were not related to time limits, "but in other areas."

92.     Ms. Holland did not elaborate on what the "other areas" were as she had not been provided that information by whomever she had spoken to within Defendant CEI's Nursing Department.

93.     The only areas of concern Plaintiff had been notified of were related to the "skills tests."

94.     Ms. Holland informed Plaintiff that Ms. Anderson would be happy to speak with Plaintiff if Plaintiff had further concerns or questions.

95.     On or about April 10, 2018, Plaintiff called Ms. Anderson to discuss the Defendant CEI's denial of Plaintiff's April 5, 2018 reasonable accommodation, Plaintiff's subsequent related

test failure, and Defendant CEI's "other areas" of concern with Plaintiff's performance in the RN Program.

96.     During the conversation with Ms. Anderson, Ms. Anderson's tone and demeanor was condescending, impatient, and antagonistic.

97.     At a point during the conversation, Plaintiff inquired why Ms. Anderson was speaking to Plaintiff in such manner.

98.     Ms. Anderson stated that Plaintiff was "being very demanding" by pursuing the request for reasonable accommodation.

99.      Ms. Anderson told Plaintiff that the requested reasonable accommodation was not appropriate for Plaintiff and that "if [Plaintiff] can't do the skill in five minutes, no one will hire [Plaintiff]."

100.     Plaintiff notified Ms. Anderson that Plaintiff had successfully learned and performed the same skills in Defendant CEI's LPN Program without the difficulties Plaintiff was experiencing in the RN Program, meaning that Plaintiff's current difficulties were related to Plaintiff's current disability symptoms.

101.     Ms. Anderson responded that no university or college would agree to provide the reasonable accommodation to Plaintiff.

102.     Plaintiff felt humiliated by Ms. Anderson's treatment of and attitude toward Plaintiff.

103.     Plaintiff felt that she was being treated in a condescending and impatient manner as a direct result of her request for reasonable accommodation, and her continued efforts to obtain the accommodation.

104.    Ms. Anderson indicated that even if Defendant CEI were to grant the reasonable accommodation to Plaintiff, Plaintiff would not be successful in the RN program for other reasons.

105.    However, Ms. Anderson refused to discuss or identify the "other reasons" to Plaintiff.

106.    Ms. Anderson ended the call with Plaintiff.

107.    On or about April 19, 2018, Plaintiff performed another timed "skills test," again without the reasonable accommodation of 1.5 time.

108.    Plaintiff again suffered intense physical symptoms of anxiety during the test.

109.    As a result of her intense anxiety symptoms, Plaintiff was unable to complete the skills required in the time allotted.

110.    Ms. Hobbs again gave Plaintiff a failing grade on the test.

111.    Had Defendant CEI approved the "1.5 the time provided on skills exams" reasonable accommodation provided in Ms. Holland's April 5, 2018 letter to Defendant CEI's Nursing Department, Plaintiff would have passed the April 19, 2018 "skills test."

112.    Because Plaintiff already had three previous Student Warning Notice, Plaintiff's failing grade on the April 19, 2018 "skills test" was grounds for dismissal from Defendant CEI's RN Program.

113.    Moreover, due to Plaintiff's failure to complete the fourth "skills test," Ms. Hobbs gave Plaintiff a failing grade for the entire course.

114.    This, too, was grounds for dismissal from Defendant CEI's RN Program.

115.    On or about the same day, Ms. Hobbs issued a fourth Student Warning Notice for "Other: Failed final skills attempt" stating, "[Plaintiff] failed in the final attempt IV solutions, piggybacks, and pushes shills pass off due to missed critical items.  As per the syllabus not

successfully completing all skills for ARN 100L will result in a failing grade and per they [sic] policy and procedures a failing grade in any class results in dismissal from the RN Program."

116.    On or about April 19, 2018, Plaintiff was called to Ms. Hobbs' office where Plaintiff was informed that she was being dismissed from the RN Program.

117.    Plaintiff was presented with a copy of the fourth Student Warning Notice and told that she needed to review and verify that she agrees with the action.

118.    However, Plaintiff was sobbing and experiencing immense anxiety making it virtually impossible for Plaintiff to meaningfully review the document, ask questions, and formulate a response.

119.    Because Plaintiff was not acting quickly enough, Lynette Sharp, one of Plaintiff's instructors who was present for the meeting, impatiently stated to Plaintiff "come on, this needs to get done," referring to the Warning form.

120.    Plaintiff marked the form as instructed and signed it before leaving the office.

121.    By denying Plaintiff's request for reasonable accommodation for 1.5 time for timed "skills tests," Defendant CEI denied Plaintiff the opportunity to participate equally in the RN Program.

122.    Defendant CEI's denial of Plaintiff's request for reasonable accommodation for 1.5 time for timed "skills test" provided the basis for Ms. Hobbs to give Plaintiff a failing grade on the two time-limited tests administered after April 5, 2018.

123.    Ms. Hobbs' decision to give Plaintiff a failing grade on each timed test administered after April 5, 2018 caused Plaintiff to exceed the allowed number of failed "skills tests" in a semester.

124.     Plaintiff's failures on the "skills tests" after April 5, 2018 allowed Ms. Hobbs to give Plaintiff a comprehensive failing grade in the RM Program for the semester, despite Plaintiff's success in her classroom-based courses, Plaintiff's ability to perform the skills with her peers, Plaintiff's ability to perform the skills tested within "1.5 time" requested and approved by Ms. Holland on April 5, 2018, and Plaintiff's previous successful performance of the individual "failed" skills in Defendant's LPN Program.

125.     Had Defendant CEI approved Plaintiff's reasonable accommodation of "1.5 the time provided on skills exams" approved by Ms. Holland on April 5, 2018, Plaintiff would have successfully completed the April 9, 2018 and April 19, 2018 "skills tests."

126.     Had Defendant CEI approved Plaintiff's reasonable accommodation of "1.5 the time provided on skills exams" approved by Ms. Holland on April 5, 2018, Plaintiff would not have been dismissed from Defendant CEI's RN Program.

127.     Defendant CEI's vague and unsupported references to "other areas" of concern related to Plaintiff's performance were pretexts for Defendant CEI's discriminatory conduct.

128.     Defendant CEI discriminated against Plaintiff by denying Plaintiff's Aril 5, 2018 request for reasonable accommodation for "1.5 the time provided on skills exams."

129.     Defendant CEI discriminated against Plaintiff by dismissing Plaintiff from Defendant CEI's RN Program.

130.     By and through Ms. Anderson's conduct toward and statements to Plaintiff on or about April 10, 2018, Defendant CEI interfered with Plaintiff's federal civil rights to seek a reasonable accommodation.

131.    By and through Ms. Anderson's conduct toward and statements to Plaintiff on or about April 10, 2018, Defendant CEI retaliated against Plaintiff for Plaintiff's pursuit of her federal civil right to seek a reasonable accommodation.

132.    Ms. Anderson displayed discriminatory animus toward Plaintiff on or about April 10, 2018.

133.    As a result of Defendant CEI's conduct toward and treatment of Plaintiff, Plaintiff does not feel welcome to attempt to re-enroll in Defendant CEI's RN Program.

134.    As a result of Defendant CEI's removal of Plaintiff from the RN Program, Plaintiff suffered a long-standing and significant episode of anxiety and depression.

135.    As a result of Defendant CEI's removal of Plaintiff from the RN Program, Plaintiff was forced to pursue her RN degree at Idaho State University.

136.    It is more expensive to attend Idaho State University than Defendant CEI, which necessitated Plaintiff's use of federal student loans, where Plaintiff had required only financially based grants to pay for her attendance in Defendant CEI's RN Program.

137.    Defendant CEI's removal of Plaintiff from the RN Program caused a delay in Plaintiff's education.

138.    Idaho State University also requires that Plaintiff complete certain courses as prerequisites to its RN Program, causing further expense and delay.

139.    Idaho State University is approximately one hour from Plaintiff's home and will necessitate lengthy commutes for the laboratory class required as part of ISU's RN Program.

140.    As a single parent, Plaintiff will have much difficulty arranging childcare for the days Plaintiff must travel to ISU for required in-class courses.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**For Violations of Title II of the Americans With Disabilities Act of 1990 (ADA)**
**42 U.S.C. § 12131, *et seq.***

141.     Plaintiff incorporates all preceding paragraphs here as though stated *in haec verba*.

142.     Plaintiff is disabled as that term is defined by the ADA because Plaintiff has a mental impairment that substantially limits one or more of Plaintiff's major life activities.

143.     Plaintiff's mental impairment includes mental and/or psychological disorders of emotional and/or mental illnesses.

144.     Plaintiff is a qualified individual pursuant to the ADA because she can perform the essential tasks and skills required for successful enrollment and participation in Defendant CEI's RN Program, with or without a reasonable accommodation. 42 USC § 12131(2).

145.     Defendant CEI is a "public entity" as that term is defined by 42 USC § 12131(1)(B) because it is a public institution of higher learning, state agency and publicly funded state organization.

146.     Defendant CEI is a "program" as that term is defined by 42 U.S.C. § 2000d-4a(2)(A).

147.     Defendant CEI is liable for the vicarious acts of its employees.

148.     Plaintiff requested a reasonable accommodation from Defendant CEI elated to Plaintiff's disabilities.

149.     Plaintiff's reasonable accommodation of "1.5 the time provided on skills exams" was approved by Ms. Holland, Defendant CEI's Disability Resources and Services Coordinator on or about April 5, 2018.

150.     However, Plaintiff's reasonable accommodation of "1.5 the time provided on skills

COMPLAINT AND DEMAND FOR JURY TRIAL                                    Page  17

exams" was thereafter denied by faculty employees in Defendant CEI's RN Program.

151.    At least four "reasons" for Defendant CEI's denial of Plaintiff's reasonable accommodation were provided, on different occasions.

152.    The first basis stated by of Defendant CEI's for its denial of Plaintiff's reasonable accommodation was the policy requiring all accommodation requests to be submitted and approved prior to the beginning of the semester.

153.    Such a policy serves no purpose other than to deny an equal education to disabled students such as Plaintiff.

154.    A second basis stated by Defendant CEI for its denial of Plaintiff's reasonable accommodation was that "no university or college would agree to provide the reasonable accommodation [to Plaintiff]."

155.    This is an unreasonable and unlawful basis for denial of Plaintiff's accommodation request.

156.    A third basis stated by Defendant CEI for its denial of Plaintiff's reasonable accommodation was that "if [Plaintiff] can't do the skill in five minutes, no one will hire [Plaintiff]."

157.    This is an unreasonable and unlawful basis for denial of Plaintiff's accommodation request.

158.    A fourth basis by Defendant CEI for its denial of Plaintiff's reasonable accommodation was that even if Defendant CEI were to grant Plaintiff's reasonable accommodation, Plaintiff would not be successful in Defendant CEI's RN program.

159.    Plaintiff remains unaware of a factual basis for this claim.

160. First, Defendant did not notify Plaintiff of any deficiency in Plaintiff's academic performance, unrelated to her timed lab skills test performances, until after Plaintiff questioned the basis of Defendant CEI denial of Plaintiff's accommodation request.

161. Second, Plaintiff's above-average grades in her RN Program classroom-based courses, as well as her previous above-average grades and academic performance in Defendant's LPN Program, indicate that Defendant was searching for pretext to support its denial of Plaintiff's reasonable accommodation request.

162. The reasonable accommodation of "1.5 the time provided on skills exams" would have enabled Plaintiff to complete the April 9, 2018 timed "skills test" successfully.

163. The reasonable accommodation of "1.5 the time provided on skills exams" would have enabled Plaintiff to complete the April 19, 2018 timed "skills test" successfully.

164. Approval of Plaintiff's request for reasonable accommodation of "1.5 the time provided on skills exams" would not have required a substantial or fundamental modification of Defendant CEI's programs or standards.

165. Plaintiff's request for accommodation was reasonable in light of the totality of Plaintiff's circumstances.

166. Plaintiff was denied a reasonable disability accommodation and then dismissed from Defendant CEI's RN Program when Plaintiff failed due to time constraints.

167. Plaintiff was dismissed from Defendant CEI's RN Program on the basis of Plaintiff's disability.

168. Defendant CEI's denial of Plaintiff's reasonable accommodation and/or Defendant CEI's dismissal of Plaintiff from Defendant CEI's RN Program denied Plaintiff a public benefit.

169. Plaintiff was excluded from participation and/or denied the benefits of Defendant

CEI's RN Program by reason of Plaintiff's disability.

170.    Defendant CEI's failure to accommodate Plaintiff constituted disability discrimination.

171.    Plaintiff alerted Defendant CEI to Plaintiff's need for "1.5 the time provided on skills exams" disability accommodation.

172.    By at least April 5, 2018, Defendant CEI was on notice that Plaintiff's "1.5 the time provided on skills exams" disability accommodation was required for Plaintiff to equally participate in Defendant CEI's RN Program.

173.    Plaintiff's need for "1.5 the time provided on skills exams" disability accommodation was or should have been obvious to Defendant CEI when Plaintiff failed her April 9, 2018 timed "skills test" due to an inability to meet the set time requirement.

174.    Plaintiff's need for "1.5 the time provided on skills exams" disability accommodation was or should have been obvious to Defendant CEI when Plaintiff failed her April 19, 2018 timed "skills test" due to an inability to meet the set time requirement.

175.    Defendant CEI failed to undertake a fact-specific investigation to determine what constitutes a reasonable accommodation for Plaintiff under the ADA.

176.    As part of the fact-finding investigation, Defendant CEI had a duty to consider Plaintiff's particular need in determining whether Plaintiff's requested accommodation was reasonable.

177.    Defendant CEI failed to consider Plaintiff's particular need in determining whether Plaintiff's requested accommodation was reasonable.

178.    Defendant CEI knew or should have known that its denial of Plaintiff's reasonable accommodation request was substantially likely to result in harm to Plaintiff's federally protected

right to equal participation in Defendant CEI's RN Program.

179.    Defendant failed to act upon the substantial likelihood that Plaintiff's federally protected right to equal participation in Defendant CEI's RN Program would be harmed, despite Defendant CEI's knowledge that its denial of Plaintiff's reasonable accommodation would result in such harm.

180.    Defendant CEI's failure to act upon the substantial likelihood of harm was a result of more than mere negligence.

181.    Defendant CEI's failure to act upon the substantial likelihood of harm was a result of deliberate indifference.

182.    Plaintiff's federally protected right to equal participation in Defendant CEI's RN Program was in fact harmed by Defendant CEI's deliberate indifference.

183.    By its deliberate indifference, Defendant CEI intentionally discriminated against Plaintiff in violation of the ADA.

184.    Defendant CEI disregarded Plaintiff's plight and distress.

185.    Defendant CEI intentionally or with deliberate indifference failed to provide meaningful access to Defendant CEI's RN Program by denying Plaintiff's request for reasonable accommodation.

186.    Defendant CEI's displayed deliberate indifference by denying Plaintiff's reasonable accommodation request without sufficient investigation.

187.    Pursuant to the ADA, Defendant CEI is liable for Plaintiff's damages because Defendant intentionally or with deliberate indifference failed to provide Plaintiff with meaningful access to Defendant's the RN Program and/or failed to reasonably accommodate Plaintiff's disability.

188.    Plaintiff suffered economic harm as a result of Defendant CEI's discriminatory conduct, as described herein.

189.    Plaintiff suffered economic damages as a result of Defendant CEI's retaliatory conduct, as described herein.

190.    Plaintiff suffered mental and emotional harm as a result of Defendant CEI's discriminatory conduct, as described herein.

191.    Plaintiff suffered mental and emotional harm as a result of Defendant CEI's retaliatory conduct, as described herein.

<u>SECOND CAUSE OF ACTION</u>

**For Violations of Section 504 of the Rehabilitation Act of 1973**
**29 U.S.C. 701, *et seq.***

192.    Plaintiff incorporates all preceding paragraphs here as though stated *in haec verba*.

193.    Plaintiff is an individual with a disability.

194.    Plaintiff is otherwise qualified to enroll in and participate in Defendant CEI's RN Program.

195.    Plaintiff was denied participation in Defendant CEI's RN Program based solely on Plaintiff's disability when Defendant denied Plaintiff's reasonable accommodation request and when Defendant dismissed Plaintiff from the RN Program.

196.    At all times relevant herein, Defendant CEI received federal financial assistance.

197.    Upon notification of Plaintiff's need for disability accommodation, Defendant CEI had a duty to undertake a fact-specific investigation to determine what constitutes a reasonable accommodation under Section 504 of the Rehabilitation Act.

198.    Defendant CEI displayed deliberately indifference, as discussed above.

199.    Defendant intentionally discriminated against Plaintiff on the basis of Plaintiff's

disability, as discussed above.

200.    Pursuant to Section 504 of the Rehabilitation Act, Defendant CEI is liable for Plaintiff's damages because Defendant intentionally or with deliberate indifference failed to provide Plaintiff with meaningful access to Defendant's the RN Program and/or failed to reasonably accommodate Plaintiff's disability.

201.    Plaintiff suffered economic harm as a result of Defendant discriminatory conduct, as described herein.

202.    Plaintiff suffered economic damages as a result of Defendant CEI's retaliatory conduct, as described herein.

203.    Plaintiff suffered mental and emotional harm as a result of Defendant CEI's discriminatory conduct, as described herein.

204.    Plaintiff suffered mental and emotional harm as a result of Defendant CEI's retaliatory conduct, as described herein.

## **RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1.      For affirmative relief requiring Defendant CEI to arrange and pay the costs for its administrators, employees, faculty members, and other agents/representatives to attend or otherwise participate in training regarding its obligations under (1) the Americans with Disabilities Act and its implementing regulations; and (2) the Rehabilitation Act of 1973 and its implementing regulations; and/or

2.      For affirmative relief requiring Defendant CEI to develop internal policies ensuring ongoing and future training and compliance with all applicable requirements of (1) the Americans with Disabilities Act and its implementing regulations; and (2) the Rehabilitation Act of 1973 and

COMPLAINT AND DEMAND FOR JURY TRIAL                              Page  23

its implementing regulations; and/or

     3.     For an award of compensatory damages in an amount to be determined at trial; and/or

     4.     For Plaintiffs' reasonable costs and attorney's fees incurred pursuant to 29 U.S.C. § 794a(b) and/or other applicable law; and/or

     5.     For such other and further relief as the Court may deem just and equitable.

DATED this 18th Day of April 2020.

                ERTZ JOHNSON, LLP


                /s/Eileen R. Johnson_____
                Eileen R. Johnson
                *Attorneys for Plaintiff*


## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on any and all issues properly triable by jury in this action.

DATED this 18th Day of April 2020.

                ERTZ JOHNSON, LLP


                /s/Eileen R. Johnson_____
                Eileen R. Johnson
                *Attorneys for Plaintiff*